### THE CONNEMARA.

#### MORRIS v. THE CONNEMARA.

(District Court, S. D. New York. June 29, 1893.)

SHIPPING—CATTLE—FAILURE TO TAKE SUFFICIENT FODDER.

A steamship carrying cattle sailed without taking on board all of the fodder furnished alongside for use of the cattle on the voyage. It appeared that after the ship had left her dock, to take advantage of the tide, she remained in the stream seven hours,—long enough to have taken aboard the fodder left behind; also that the representative of the owner of the cattle made repeated demands on the agents of the ship before she sailed that the remaining bales be taken aboard, which were neglected. The bill of lading required the ship to supply "conveyance for necessary fodder." The master maintained that he relied on the representations of the drover in charge that there was fodder enough, which representations the drover denied. The drover had no authority to determine the amount to be taken, or to leave behind any that was supplied by the owners of the cattle. The cattle were without food for nearly 48 hours before arrival at Havre, when a very slight amount was furnished them: and when they arrived at Paris, one or two days later, they had sustained a serious loss in weight and condition, for which damage this libel was filed. *Held*, that the ship was liable for the damage arising from insufficiency of food during the voyage and up to the landing of the cattle at Havre, but not for the loss through lack of food thereafter.

In Admiralty. Libel for damage to cattle in transportation. Decree for libelant.

Bristow, Peet & Opdyke and David Willcox, for libelant.
Convers & Kirlin, for claimant.

BROWN, District Judge. The above libel was filed to recover for the damage to a cargo of cattle carried in November, 1890, by

the steamship Connemara from New York to Havre, in consequence of alleged lack of necessary food, a portion of the hay designed for them having been left behind by the steamer.

The bill of lading provided that the steamer should supply "conveyance for the necessary fodder." The steamer was at the Atlantic basin, and there took on board the fodder provided by the shippers, except about 79 bales of hay, which were left on the barge alongside of her, at the time when the steamer, to take advantage of the tide, was hauled out into the stream at about 7 o'clock on the morning of November 11th. At about 8 A. M. she arrived off Liberty island, and was there anchored till about 3:30 P. M., when she proceeded to sea. The cattle, numbering 519 head, were shipped on board during the forenoon. The master knew when he hauled out, that a part of the hay provided was not on board, but was left on the barge. A portion of the corn provided was also unaccounted for. The voyage was rough; some cattle were lost through suffocation in rough weather; and for nearly 48 hours before arrival at Havre, the cattle were without food. At Havre only a very slight quantity was supplied to them; so that for a period of from one to two days more, during which they were sent to Paris by rail in three different trains, they were almost wholly without food, in consequence of which they became much emaciated, and the owners sustained thereby considerable loss, for which the above libel was filed.

The claimants contend that when the steamer sailed without the remaining bales of hay, it was upon the assurance of Connors, the drover who was in charge of the cattle on board the steamer, that there was fodder enough; and that the steamer should go on without waiting to take aboard what had been left behind. Several witnesses corroborate the captain's testimony as to this conversation. Connors most strenuously denies it; and he and the assistant drover assert that they made frequent protests to the captain during the day that the additional fodder was necessary, and must be taken on board. The testimony of McCauley, one of the libelant's witnesses, indicates that something of the nature stated by the captain was said by Connors just before the ship sailed, viz. that if the ship lost that tide, she would lose another day; while the 40 bales of fodder left behind would be only about a day's supply, so that nothing would be gained by waiting. The testimony shows that Connors understood that there were only about 40 or 50 bales left behind, as the master told him about 11 A. M. Connors had nothing to do with the supply or the shipment of the fodder, and no responsibility in connection with it till it was shipped. His duties were only to take charge of the cattle after they were shipped on board.

The other circumstances in the case show that the conversations with Connors, whatever they were, are altogether insufficient to justify the master in sailing without taking on board the fodder that had been supplied for the cattle. Connors did not have the

least authority, real or apparent, to bind the owners of the cattle on this subject; or to release the ship from her obligation to take on board the necessary fodder which the owners of the cattle had provided and sent alongside. After the vessel hauled out into the stream, two hours' time would have been ample to bring the lighter alongside and take the remaining bales on board. The steamer had a tug at hand to assist her as desired; and she did not sail till at least 7½ hours after she had anchored near Liberty island. Not the least excuse is offered by the master for not taking steps at once to bring the lighter alongside and take the rest of the fodder aboard, long before the alleged conversation with Connors above referred to.

But besides all this, between 9 and 10 A. M. Mr. Berrie, the representative of the owners of the cattle, learning that some of the bales had not been taken, sent a complaint to Barber & Co., the agents of the steamer, and a demand that the remaining bales be taken aboard. This was urgently pressed upon the agents of the ship, who made the indifferent reply that there was enough fodder on board, and if Mr. Berrie wanted the rest taken, he must see to it himself. Mr. Berrie then endeavored to stop the shipment of the cattle; but it was too late, and at length Barber & Co. agreed to telephone for a tug to take the lighter to the ship if Mr. Berrie would pay the towage, which was agreed to. The lighter, however, was not sent, and the ship sailed, as before stated, without the remaining bales.

The behavior both of the captain and of the ship's agents in regard to this fodder, was extremely arbitrary and culpable. The captain's own account of his conversation with Connors at the last moment shows his knowledge of his remissness, and of his duty to take that fodder on board. He states that he asked of Connors an authority in writing for sailing without the remaining bales, which Connors refused, saying that his word was as good as his bond. But not only had the captain misled Connors by his erroneous statement of the amount of hay left behind, but he had not the least reason for supposing that Connors had anything to do with the supply of fodder, or with determining how much should be taken, or that Connors had any authority to leave behind any fodder that the owners had supplied. It would be monstrous if shipping contracts could be violated and the property rights of the shippers of cargo could be sacrificed through excuses founded on conversations like this with subordinates whom the master had misled, even if the conversation occurred as alleged. Both the agents and the master disregarded their plain duty, and they necessarily took the risk of the result. I doubt whether anything was said substantially different from what McCauley says; and that is plainly no defense.

I do not think the computation of 15 pounds of hay per head a day can be accepted as showing that there was waste of the hay taken; or that there was actually taken on board enough for

the voyage. Including the inevitable loss from waste, the evidence shows that 16 pounds a day is none too much; and this, on the closest computation, involves a large deficiency.

The steamer must be held answerable, therefore, for the damage arising from the insufficiency of food during the voyage and up to the landing of the cattle at Havre. I do not think she is answerable for any further damage through the absence of a proper supply of food after arrival at Havre. The indifference and brutality of the treatment of the cattle on arrival at Havre and between there and Paris, form a fair counterpart to the indifference of the ship's representatives here.

Unless some better mode of ascertaining and apportioning the ultimate loss from depreciation of the cattle through these two causes can be discovered upon a reference, should the parties choose to take one, the entire loss up to the time of the arrival of the cattle at Paris will be divided, and one-half charged to the ship. A decree may be entered accordingly, with costs.